**The STATE of Ohio, Appellee,**

v.

**ROCKWELL, Appellant.**

[Cite as *State v. Rockwell* (1992), 82 Ohio App.3d 44.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–686.

Decided Aug. 27, 1992.

*Michael Miller*, Prosecuting Attorney, and *Joyce S. Anderson*, Assistant Prosecuting Attorney, for appellee.

*Paul DePascale; Jon J. Saia; Randall Dana*, Ohio Public Defender, and *Thomas R. Wetterer, Jr.*, Assistant Public Defender, for appellant.

---

REILLY, Judge.

Defendant-appellant, Charles Rockwell, has submitted a motion to this court requesting that we certify the record of this case to the Supreme Court of Ohio for review and final determination for the reason that the judgment of this court in this case is in conflict with a judgment pronounced on the same question by the Eleventh District Court of Appeals sitting in Trumbull County, *State v. Clay* (1983), 9 Ohio App.3d 216, 9 OBR 366, 459 N.E.2d 609.

In *Clay*, the court identified the issue before it as follows:

"When a defendant is arrested and charged with commission of one crime, held in jail pending indictment on additional charges, indictment is completed and service had on the defendant on those additional charges, does the computation of time for speedy trial consideration run from the original arrest date or the date of the return of the indictment containing the additional charges?" *Id.* at 216, 9 OBR at 367, 459 N.E.2d at 610.

After identifying the issue in *Clay*, the court noted that the state possessed all pertinent facts which it needed to bring both the original and the additional charges at the time of the arrest. The defendant had been arrested and charged with five counts on February 2, 1982. Additional charges were returned by the grand jury and served on the defendant on April 6, 1982, approximately four months later.

In *Clay*, the court based its ruling on the holding of *People v. Parker* (1978), 59 Ill.App.3d 302, 16 Ill.Dec. 592, 375 N.E.2d 465. The *Clay* decision held:

"When new and additional charges arise from the same facts as did the original charge, and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charges is subject to the same statutory limitations period that is applied to the original charge." *Clay*, syllabus.

Whether our decision is in direct conflict with *Clay* depends on whether child endangering charges could have been brought against Rockwell on the date of his arrest for domestic violence, November 10, 1990. In other words, when did the state have enough information to establish probable cause to file child endangering charges against Rockwell?

The record contains the following evidence on the child endangering charge:

The bindover from municipal court states that Rockwell's arrest date for child endangering was November 14, 1990.

At trial, the defense asserted that the slate sheets from the jail indicated that Rockwell was incarcerated in Franklin County on November 12 for domestic violence charges and child endangering charges. The defense acknowledged that the child endangering charges were not sworn out in municipal court until November 14 or November 15.

At trial, the prosecution asserted that Rockwell was not slated on child endangering charges until November 14.

The trial court determined that for speedy-trial calculations, time commenced to run as of November 14, the day the court found that Rockwell was slated for child endangering. The record does not contain Rockwell's slate sheets.

Mark Martin was the Whitehall police officer who took Billie Rockwell's domestic violence report against Rockwell. He testified that she originally reported the domestic violence against herself as the basis of her complaint.

Appellant argued that, as a second issue, Billie Rockwell stated that he had also abused her children, physically and mentally; however, he could not recall if the complaint had also been filed with respect to those allegations.

Mark Thomas, a Whitehall detective, was sent to Children's Hospital on November 10 to photograph Amanda and Alisha because of the possible abuse situation. Later that day, he interviewed Rockwell and indicated to him that he wanted to discuss the condition of the children. Thomas asked Rockwell how Amanda got her black eyes. Rockwell replied that she fell while getting out of the tub. Thomas also questioned him about the girls' eating habits. Rockwell stated that he fed them all the time, whenever they were hungry.

When Thomas initially interviewed Amanda on November 10, she told him two different stories about how she got her black eyes: first, that she fell getting out of the tub; and second, that she slipped in the dark while trying to turn the bathroom light on. The first time that Thomas heard Amanda implicate Rockwell was on November 13, when she told the doctor and the social worker from Children's Hospital's child abuse team that Rockwell had thrown her against a wall.

Thomas's actions were done in the course of investigating the possible child abuse situation. This investigation was initiated promptly—as soon as the appearance of the children prompted the suspicion. Thomas interviewed Rockwell, Billie Rockwell, Amanda, doctors at Children's Hospital, and social workers at the hospital and at Franklin County Children's Services. The

investigation was handled conscientiously. When the investigation was completed, charges were brought against Rockwell.

On appeal, this court calculated appellant's initial speedy-trial date from the date that child endangering charges were brought against him, November 14. We did not find that R.C. 2945.71 required that Rockwell's speedy-trial date be calculated from the date he was arrested on the domestic violence charge.

Child endangering charges are serious charges and should not be brought rashly. The state should not be expected to determine whether a situation warrants bringing child endangering charges until trained professionals have investigated the matter.

We find that all pertinent facts needed to bring the child endangering charges were not known on November 10 and that the charges were properly brought on the 14th, the day after Children's Hospital's child abuse team spoke with Amanda and after Detective Martin had interviewed the necessary people.

Because we do not find that a conflict exists between our decision in this case and that of *Clay*, the motion to certify is denied.

*Motion denied.*

BOWMAN and PEGGY BRYANT, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.